[No. 32476. Department Two. November 27, 1953.]

SADANOBU CHIKUSA, *Appellant*, v. AMERICAN INDEMNITY COMPANY, *Respondent.*[1]

*Levinson & Friedman,* for appellant.

*George H. Bovingdon,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action on a robbery, burglary and theft policy, for loss by burglary. The only question involved is whether the loss was covered by the terms of the policy.

Item 1 of the policy stated:

"(a) Name of Insured — Sadanobu Chikusa, d/b/a Bo's Rainier Market.

(b) Insured's Mailing Address — 2201 Rainier Avenue Seattle, Washington

(c) Location of building containing the premises — As above

(d) Business conducted in premises by Insured — Market."

The policy covered: (1) Insured property while in the care and custody of a messenger outside the premises (Amount, $2,000, Premium, $20); (2) Insured property from within the premises while a custodian was on duty therein (Amount, $2,000, Premium, $27); (3) The following, by endorsement attached to the policy:

[1]Reported in 263 P. (2d) 589.

"64—GENERAL CHANGE ENDORSEMENT

*"It is agreed that as of the effective date hereof the policy is amended in the following particulars:*

"It is agreed that the insurance under the policy shall apply as provided in the schedule to cover loss by burglary, robbery, theft and larceny, of any of the property insured hereunder from within the home of the messenger or custodian described in the schedule. The insurance granted under this endorsement shall apply for twenty four hours daily within the policy period and the total liability under the policy and endorsement combined shall be $4,000.00

### SCHEDULE.

| Name of Messenger or Custodian: | Home Address. | Insurance. | Premium. |
|---|---|---|---|
| Sadanobu Chikusa | 2201 Rainier Avenue | 2,000.00 | 10.00" |

Appellant, at the time of the loss, and for a period of years prior thereto, had operated a grocery store at 2201 Rainier avenue in the city of Seattle. The store was on the ground floor of the premises. On the second floor were apartments, one of which was occupied by appellant as a residence for his family and himself up to June, 1951. The entrance most commonly used for the living quarters was through the store. In June, 1951, appellant moved with his family to a residence constructed for him at 4816 Fifty-third avenue south, in Seattle, where they thereafter resided. When they moved, the house was completely enclosed. The heating plant and plumbing were operating, and the house was served with light, water, and gas, as well as telephone. The telephone listing at the new home was a personal listing, whereas the telephone listing at 2201 Rainier avenue was "Bo's Rainier Market." Such entertaining as was done by appellant and his family was done at the new home.

After appellant and his family moved to their new home in June, 1951, appellant continued to pay rent on the living quarters over his store. He occasionally slept there when working on the books, and some clothes and furniture were kept in the apartment.

Saturday, September 1, 1951, appellant left with friends on a Labor Day fishing trip. The morning after Labor Day, his employees discovered that the grocery store had been

entered, and that money and checks of the value of $1,820 had been removed from a bag hidden in an icebox in the grocery portion of the building. The portion of the building from which the money was taken was exclusively devoted to the operation of the grocery business. The icebox from which the checks and currency were removed was ten or fifteen feet distant from the stairway leading from the store to the apartment. At the trial, the court found that the money and checks were stolen from appellant's store, and not from his home. The action was dismissed, and this appeal follows.

Appellant calls our attention to the case of *Jetzinger v. London Guarantee & Acc. Co.*, 210 Ill. App. 308. There, the policy insured against loss by theft of property "occasioned by its felonious abstraction from the interior of the house, building, apartments or rooms actually occupied by the assured, . . ." The premises were described as follows: " 'Location of premises insured, 5726 Michigan Ave., Chicago, Ill. The building is flat building. The premises occupied by the assured hereunder are 2d flat.' " The apartment consisted of a front porch, six living rooms, and a rear porch. The rear porch had a roof and a floor and had occasionally been used by the family as a sewing place, a dining place, and a sitting place. One morning, seven small rugs had been taken from the living room to the porch for the purpose of being cleaned. The maid who was doing the cleaning was called inside for a moment, and when she returned one rug was missing.

The court held that the porch was covered by the policy, and that the rug was taken from a portion of the premises actually occupied by the assured. In interpreting the meaning of the contract from the language used, the court said:

"The mere fact that in one part of the policy the words were, 'Felonious abstraction from the interior of the house, building, apartments or rooms actually occupied by the assured,' did not change in any way the intention as expressed in the contract of insurance, that the space protected was that which he occupied as the second flat or apartment. Of course, he knew that the use of the word 'interior' would

exclude his right to make any claim for the loss of anything placed or hung or found on the outside of the apartment. He knew that nothing left in the passageways, back or front, was covered by the policy. In and through those passageways he had a right of ingress and egress, but that was all. There he had no right of occupation such as he had in the apartment itself."

Another case relied upon by appellant is *General Acc. Fire & Life Assurance Corp. v. Cohen,* 73 Colo. 459, 216 Pac. 522. There the theft policy covered the entire second floor of 1418 Larimer street, Denver, Colorado. The plaintiffs were manufacturers of women's dresses, aprons and cotton goods. They occupied the second floor of two buildings, one in the front and one in the rear of 1418 Larimer street, the two buildings being connected by a wooden bridge with iron railings. The theft was from the building in the rear. It was held that the policy covered both buildings.

*Violette v. Queen Ins. Co.,* 96 Wash. 303, 165 Pac. 65, was an action on a fire insurance policy covering a stock of liquors, "all while contained in the two story brick building, with composition roof, situate on lot 3, block 1, Ralston Addition to Leavenworth, Wash." The greater part of the goods destroyed were in a room attached to the rear of the saloon. In holding that this room was a part of the brick building described in the policy as being the location of the insured goods, we quoted from *Prussian Nat. Ins. Co. v. Terrell,* 142 Ky. 732, 135 S. W. 416.

" 'It must be borne in mind that a description in a policy of the building insured is never accompanied, or intended to be accompanied, by the particularity of an architect's plans and specifications. The purpose of the description is simply to identify in a general way the building insured.' "

The insurance policy in question covered theft or robbery of insured property while in the custody of a messenger outside the premises, insured property within the premises while a custodian was on duty therein, and (the clause which concerns us) insured property "from within the home" of Chikusa, whose home address was listed as 2201 Rainier avenue. The designation in the schedule of

"2201 Rainier Avenue" merely described what the insured's home address was at the time the policy was given. If the property had been stolen from the apartment at 2201 Rainier avenue, where appellant still paid rent and used at times as a home, the theft would have been covered by the policy. But the theft was not "from within the home." It was from an icebox which was in that portion of the building devoted exclusively to the operation of the grocery business.

Appellant calls our attention to the well recognized rule that if a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. We find no need to interpret this contract. It is clear and unambiguous. It covers theft "from within the home." The evidence is certain, and the trial court so found that the theft was from the store, and not from within the home.

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.